Filed 9/20/24  P. v. Vasquez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MAURILIO GOMEZ VASQUEZ,<br><br>Defendant and Appellant. | F086495<br><br>(Super. Ct. No. 1456880)<br><br>**OPINION** |

## THE COURT\*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nancy A. Leo, Judge.

Richard M. Oberto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Christina Simpson, Lewis A. Martinez, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Detjen, Acting P. J., Peña, J. and Snauffer, J.

# INTRODUCTION

Petitioner Maurilio Gomez Vasquez petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for voluntary manslaughter (§ 192, subd. (a)). The trial court denied the petition at the prima facie stage after determining the record of conviction established he was the actual killer.

On appeal, petitioner argues the record does not conclusively refute his prima facie claim for resentencing.

We agree with petitioner and reverse.

# FACTUAL BACKGROUND

We summarize testimony presented to petitioner's grand jury, while acknowledging that the propriety of the court relying on this testimony is a subject of dispute in this appeal. In brief summary, percipient witnesses testified before the grand jury as follows.[2]

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

[2] Some of the testimony presented to the grand jury was hearsay, apparently admitted pursuant to section 939.6, subdivision (c) and section 939.71. Section 939.6, subdivision (c) is nearly identical to section 872, subdivision (b), which allows the presentation of specified hearsay in preliminary hearings. However, testimony admitted pursuant to section 872, subdivision (b) may not be considered in determining a petitioner's eligibility for resentencing pursuant to section 1172.6. (§ 1172.6, subd. (d)(3) ["The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony. . . . However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."]; see *People v. Flores* (2022) 76 Cal.App.5th 974, 988 (*Flores*) ["If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we

Around 2:00 or 3:00 in the morning on April 29, 2008, Clarence Mason, Shawn T.,[3] and Kenneth D. were in front of Mason's house when a man, who previously was unknown to them, approached them and engaged in a verbal altercation. During this altercation, Mason's roommate, Jason N., arrived. The man stated, " 'F-ing Norte,' " and " 'You want me to go and get my homies?' " (Boldface omitted.) The man said he would go to " 'Beto's' " (boldface omitted) house and bring back gang bangers.[4] Mason responded, " 'Go get your homies.' " (Boldface omitted.)

The man rode away on his bike, heading south. Toward the south end of the street, the man got off his bicycle and went to a house Kenneth and Shawn identified as belonging to Beto. He immediately left and went across the street to another house. The man then rode back northbound and turned a corner out of sight.

While the man was out of sight, Kenneth and Shawn heard a single gunshot from somewhere nearby, in the direction the man had gone. A short time later, Mason, Shawn, and Kenneth walked to the street corner, where they encountered the same man from the prior altercation. Kenneth testified two other men were standing at the corner on the

---

fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."].)

Section 1172.6 does not specify that hearsay admitted pursuant to section 939.6, subdivision (c) may not be considered in determining a petitioner's eligibility for resentencing. Neither party has argued that any of the evidence should be excluded from our consideration as hearsay. Some of the hearsay evidence presented was exculpatory. We include both hearsay and nonhearsay evidence in our summary of the grand jury testimony. Ultimately, we conclude the grand jury testimony is not dispositive, whether or not hearsay evidence is excluded.

[3] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

[4] Shawn explained that Beto was a lifelong friend of his who Shawn knew to be a Northerner or Norteño. Kenneth also described Beto as a former friend. Beto was later identified by law enforcement as Heriberto Chavez. For ease of reference, we will refer to him as Beto.

3.

opposite side of the street, observing or watching what occurred. Shawn described two other men approaching with, and standing on either side of, the man involved in the prior altercation. The man from the prior altercation pulled out an automatic handgun, yelled " 'F-ing norte' " (boldface omitted), and began shooting at Mason, Shawn, and Kenneth. Mason suffered three fatal gunshot wounds to the back as well as one gunshot wound to the thigh. Shawn suffered a single gunshot wound to his right leg and kneecap.

Law enforcement recovered 10 Luger nine-millimeter shell casings at the scene, as well as a bullet jacket and two bullets. In a later search of petitioner's bedroom, officers located a nine-millimeter Luger clip.

Shawn identified petitioner in a photographic lineup and testified to this identification. Additionally, a detective testified that Shawn, Kenneth, and Jason identified petitioner in a photographic lineup. The detective also testified that law enforcement had received an anonymous tip that someone named Carlos Soriano was the shooter. A witness to the shooting, who reported being five car lengths away from where the shooting occurred, identified Soriano in a field show-up as being the shooter. Kenneth and Jason were shown photographic lineups that included Soriano's photograph and did not identify him or anyone else in that lineup as the shooter. Shawn was taken to Soriano's field show-up and did not identify him as the shooter.

A gang expert testified regarding the activities of the local Norteño gang and opined that the instant crime was committed for the benefit of the Norteño criminal street gang. The expert testified that Beto is a documented Norteño and is considered a shot caller within the local territory of the gang. The expert also testified that petitioner met seven out of 10 criteria to be documented as a member of the Norteño gang.

Beto's wife testified before the grand jury. She acknowledged that she previously told investigators that petitioner came to the house she shared with Beto at approximately 2:30 or 3:00 in the morning on the date of the shooting and, a short time later, she heard gunshots. She also affirmed she told an investigator that, right after she heard gunshots,

4.

Beto told her petitioner shot someone. She told the investigator that no one could do anything in the neighborhood until they talked to Beto.

The grand jury was provided the following statement regarding additional exculpatory evidence: " 'The defense has an alibi witness, [petitioner's] brother, who is presently in Mexico who can provide testimony and evidence that proves that [petitioner] didn't and couldn't have committed the offenses charged.' " A detective testified that he interviewed petitioner's brother the day after the shooting and petitioner's brother reported that he had not seen petitioner on the night of the homicide. He did not provide an alibi for petitioner or suggest he had information to indicate petitioner was not the shooter.

## PROCEDURAL HISTORY

On April 11, 2013, petitioner was indicted on charges of intentional, deliberate, and premeditated murder (§ 187, subd. (a); count I), premeditated attempted murder (§§ 187, subd. (a), 664; count III), and two counts of assault with a firearm (§ 245, subd. (a)(2); counts II and IV). As to count I, the indictment alleged a gang-murder special circumstance (§ 190.2, subd. (a)(22)). As to all counts, the indictment alleged gang enhancements (§ 186.22, subd. (b)(1)(A)), and firearm enhancements (§§ 12022.5, subd. (a) (counts II and IV), 12022.53, subd. (c) (count III), subd. (d) (count I)). As to count IV, the indictment alleged a great bodily injury enhancement (§ 12022.7, subd. (a)).

On December 11, 2018, petitioner entered a plea of no contest on count I to the included offense of voluntary manslaughter (§ 192, subd. (a)), and admitted a lesser firearm enhancement pursuant to section 12022.5, subdivision (a). On count IV, petitioner pled no contest to the charged offense of assault with a firearm (§ 245, subd. (a)(2)), and admitted a gang enhancement pursuant to section 186.22, subdivision (b)(1)(B). The remaining counts and enhancements were dismissed. Counsel for petitioner agreed that there was a factual basis for the plea. When asked to state a factual basis, the People sought to incorporate the grand jury transcript. However, because the

court did not have a copy of the grand jury transcript, the People stated, in relevant part, the following factual basis for the plea:

> "[O]n April 29th of 2008 . . . [petitioner] was involved in an argument with Clarence Adrian Mason . . . . During that argument, [petitioner] personally used and personally discharged a firearm and killed Mr. Mason. Also during that argument, [petitioner] also discharged – personal use and discharged the firearm and shot Shawn [T.] in the leg causing great bodily injury. And at the time [petitioner] killed Mr. Mason and shot [Shawn T.], he was acting for the benefit of the Norte[ñ]o criminal street gang and had a specific intent to promote, further, or assist the Norte[ñ]o criminal street gang with his actions assisting in criminal conduct of the gang."

Petitioner was sentenced to an aggregate term of 23 years, eight months.

On August 30, 2022, petitioner filed a petition for resentencing pursuant to section 1172.6. Counsel was appointed to represent him.

The People opposed the petition, arguing they had not proceeded on a felony murder or natural and probable consequences theory and petitioner instead was convicted based solely on his own participation in the crime of manslaughter. In support, the People relied on testimony provided to the grand jury. The People argued petitioner's admission of the firearm enhancement constituted an admission that he personally killed Mason, establishing as a matter of law that he was the actual killer and ineligible for resentencing on that basis.

In reply, petitioner pointed out that his plea to manslaughter did not constitute an admission to acting with malice. He further argued his admission of the firearm enhancement did not prove he was the actual killer. Finally, he argued consideration of the grand jury transcript is improper at the prima facie stage.

The matter was heard on June 23, 2023. The court denied the petition as follows:

> "I do agree with the People based on his entry of plea and the admission to personally discharging of a firearm and also the factual basis that was presented at the time of the plea. So I'll find that there's not a prima facie case for his re-sentencing and he's not entitled to re-sentencing, so that will be denied."

6.

## DISCUSSION

## I.  Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)  First, the bill narrowed the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).)  Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).)  Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.)  Subsequently, Senate Bill No. 775 (2021–2022 Reg. Sess.) expanded the scope of these ameliorative provisions to "clarif[y] that persons who were convicted of attempted murder or manslaughter" are permitted the same relief as those convicted of murder.  (Stats. 2021, ch. 551, § 1; accord, *People v. Arellano, supra*, 16 Cal.5th at p. 468, fn. 3.)

Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.) If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).) However, " '[i]f the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

## II.     Nature of Prima Facie Inquiry

Our Supreme Court has emphasized that "the prima facie inquiry . . . is limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.) The court may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " at the prima facie stage. (*Ibid*.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)

We review the court's prima facie inquiry de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

8.

## III.   Analysis

Petitioner argues the court erred in denying the petition at the prima facie stage because his plea to voluntary manslaughter and admission of a firearm enhancement do not establish he is guilty of murder under current law, and the record does not otherwise establish he is ineligible for resentencing as a matter of law.  We agree that the record does not conclusively establish petitioner's resentencing ineligibility and the court therefore erred in denying the petition at the prima facie stage.

### A.   Petitioner's Plea and Admissions Do Not Conclusively Establish His Ineligibility for Resentencing as a Matter of Law

We begin with the undisputed proposition that, absent additional facts, petitioner's plea to voluntary manslaughter does not establish his ineligibility for resentencing as a matter of law.  His plea to voluntary manslaughter, standing alone, does not establish he was the actual killer who acted with express or implied malice (compare § 188, subd. (a)(3) with § 192, subd. (a)), or that he was a participant in a qualifying felony in which a death occurred and was (1) the actual killer, (2) an aider and abettor who acted with intent to kill, or (3) a major participant in the underlying felony who acted with reckless indifference to human life (compare § 189, subd. (e) with § 192, subd. (a)).  Likewise, the plea does not exclude the possibility that petitioner could have been prosecuted for the alleged murder under an imputed malice theory had he not entered his plea.

Similarly, absent additional facts, petitioner's admission of a firearm enhancement pursuant to section 12022.5, subdivision (a) does not establish his ineligibility for resentencing as a matter of law.  This enhancement establishes only that petitioner "personally use[d] a firearm" in the commission of voluntary manslaughter.  (§ 12022.5, subd. (a).)  But, a firearm may be "use[d]" in a variety of ways by a participant in offenses in which a killing results.  (§ 12022.5, subd. (a); see *People v. Jones* (2003) 30 Cal.4th 1084, 1120.)  Accordingly, the enhancement admission alone does not establish petitioner was the actual killer.  (*People v. Young* (2005) 34 Cal.4th 1149, 1205.)  Nor

does it establish petitioner harbored any specific mens rea beyond general intent. Because the admitted enhancement allegation does not "conclusively establish[] every element of the offense" under a valid theory (*Curiel*, *supra*, 15 Cal.5th at p. 463), it is insufficient to rebut petitioner's allegations of resentencing eligibility. (See *Curiel*, at p. 470 ["[T]he question is not whether it is *likely* [the petitioner] could have felt and acted in such a way," but whether the record "foreclose[d] that possibility *as a matter of law.* Only in the latter scenario would a trial court be permitted to deny a [petitioner's] section 1172.6 petition at the prima facie stage."].)

### B. The Grand Jury Transcript Does Not Conclusively Establish That Petitioner Was Convicted Under a Valid Theory

It does not appear that the trial court relied on petitioner's grand jury transcript when denying the petition. Nonetheless, the People argue the grand jury transcript is part of the record of conviction that establishes petitioner was the actual killer and therefore ineligible for resentencing as a matter of law. We disagree that the grand jury transcript conclusively establishes petitioner's role in the offense.

There is an existing body of case law that is somewhat in tension regarding the role of preliminary hearing and grand jury transcripts in the section 1172.6 prima facie inquiry. *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166–1168, held that a preliminary hearing transcript established the petitioner was ineligible for resentencing as a matter of law, where the petitioner was prosecuted as a direct aider and abettor and no felony murder or natural and probable consequences theory was considered in holding the petitioner to answer. In *People v. Rivera* (2021) 62 Cal.App.5th 217, 236–239, the court declined to follow *Nguyen* and held that, because the petitioner did not admit to the truth of any evidence presented at the grand jury, the grand jury evidence could not demonstrate that the petitioner was ineligible for resentencing as a matter of law. In *Flores*, *supra*, 76 Cal.App.5th at pages 991–992, a panel of this court held that the petitioner did not admit the truth of the preliminary hearing testimony and, in any event,

the preliminary hearing testimony left open the possibility he was convicted under a now-invalid theory of aider and abettor liability and thus did not establish ineligibility for resentencing as a matter of law.

More recently, in *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670 (*Patton*),[5] the court held that uncontroverted testimony at the preliminary hearing established the petitioner was "the sole and actual perpetrator of the attempted murder" and therefore ineligible for resentencing as a matter of law. (*Patton*, at p. 657.) Likewise, in *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted October 11, 2023, S281643, the court held that the preliminary hearing transcript established the petitioner's ineligibility for resentencing as a matter of law, where the preliminary hearing transcript contained "nothing to suggest that any other person was involved in the incident" (*id.* at p. 990) and the petitioner did not allege any facts concerning the killing, deny he was the actual killer, assert another person fired the fatal shot, or allege he acted without intent to kill (*id.* at p. 989). Similarly, in *People v. Mares* (2024) 99 Cal.App.5th 1158, review granted May 1, 2024, S284232, the court held that a preliminary hearing transcript which showed the People were pursuing only an actual killer theory was sufficient to defeat the conclusory allegations of resentencing eligibility contained in the petitioner's petition. (*Id.* at p. 1166.) Most recently, however, in *People v. Williams* (2024) 103 Cal.App.5th 375, 397–403, a divided panel of this court rejected the reasoning of *Patton*, *Pickett*, and *Mares*, and held that a preliminary hearing transcript does not conclusively establish petitioner was convicted under a valid theory.

We need not resolve this split in authority in the instant case as we would reach the same result under either line of authority. Under the reasoning of *Williams*, *Flores*, and

---

[5] Our Supreme Court has granted review in *Patton* to determine whether the trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny the petition at the prima facie stage. (*People v. Patton* (June 28, 2023, S279670).)

*Rivera*, the preliminary hearing evidence cannot establish that petitioner was convicted under a valid theory. Meanwhile, under the reasoning of *Patton*, *Pickett*, and *Mares*, conflicts in the evidence presented to the grand jury are sufficient to create a factual issue regarding petitioner's role in the offense that can only be resolved through an evidentiary hearing. Notably, the holdings in *Patton*, *Pickett*, and *Mares* were predicated on uncontroverted preliminary hearing testimony that the petitioner was the sole and direct perpetrator of the relevant offense. (*Mares*, *supra*, 99 Cal.App.5th at pp. 1161–1162, rev. granted [police testified to the petitioner's admissions to stabbing the victim and acting alone]; *Pickett*, *supra*, 93 Cal.App.5th at p. 986, rev. granted ["There was no evidence suggesting that anyone other than [the petitioner] was involved in [the victim's] death."]; *Patton*, *supra*, 89 Cal.App.5th at pp. 652–653, 657, rev. granted [based on law enforcement testimony that surveillance video showed a man they knew to be the petitioner walking up to the victim and shooting him, the court determined the petitioner was "the sole and actual perpetrator of the attempted murder"].) Because the evidence was uncontroverted, it could rebut the factual allegations of the petition without requiring the trial court to resort to improper factfinding at the prima facie stage. (*Mares*, at pp. 1170–1171; *Pickett*, at p. 990; *Patton*, at p. 658.)

Here, the evidence against petitioner was strong, but not uncontroverted. One eyewitness identified someone other than petitioner as the shooter, and a statement submitted by petitioner's brother to the grand jury suggested petitioner had an alibi. Furthermore, the evidence did not suggest the shooter acted alone, but rather was accompanied by two others during the shooting. Additionally, the evidence arguably suggests the involvement of a fourth person: a gang shot caller who may have authorized the shooting. Accordingly, the evidence here is distinguishable from the type of uncontroverted evidence of sole and direct perpetrator liability found to be dispositive in *Patton*, *Pickett*, and *Mares*. Even assuming the court properly may consider preliminary hearing or grand jury testimony in determining whether a petitioner has made a prima

12.

facie claim of resentencing eligibility pursuant to section 1172.6, the evidence presented here does not " 'establish conclusively that [petitioner] is ineligible for relief.' " (*Curiel*, *supra*, 15 Cal.5th at p. 460.)

### C. The Prosecutor's Stated Factual Basis

The People also rely on the prosecutor's stated factual basis to argue the record establishes petitioner was the actual shooter. However, neither petitioner nor his counsel stipulated to the factual basis provided by the prosecutor, and petitioner did not admit any of the facts recited therein. Thus, the People's stated factual basis does not establish the basis for petitioner's plea. (*People v. Das* (2023) 96 Cal.App.5th 954, 957, 962 [prosecutor's recitation of factual basis, which defense did not stipulate to or admit, did not establish the basis for the plea or an admission of the elements of the offense under a valid theory].) Furthermore, given that the prosecutor's stated factual basis conflicts with other evidence presented to the grand jury, it cannot be said that the prosecutor's statements conclusively establish petitioner's ineligibility for resentencing, even under the approach implemented in *Patton*, *Pickett*, and *Mares*.

## IV. Conclusion

Because nothing in the record conclusively establishes the theory or theories under which petitioner was convicted, nor foreclosed the possibility of prosecution under an imputed malice theory eliminated by Senate Bill No. 1437, the record does not establish petitioner's ineligibility for resentencing as a matter of law. Accordingly, the order denying the petition must be reversed.

## DISPOSITION

The order denying the petition for resentencing is reversed and the matter is remanded with directions to issue an order to show cause (§ 1172.6, subd. (c)) and conduct such further proceedings as may be necessary pursuant to section 1172.6, subdivision (d).